Mr. Justice James
delivered the opinion of the court.
In this case a bill in equity was filed charging in behalf of a number of complainants, that the defendants had committed fraud in making certain purchases of them, and that by reason of this fraud the defendants had acquired no title to the goods, and that these goods had been confused by the defendants with other goods, so that complainants could not recover by replevin; in other words that they had no remedy at law for the purpose of recovering their goods specifically, and therefore they sought relief in a court of equity.
A restraining order was made at the time of the filing of the bill, without taking any undertaking from the complainants. Afterwards upon answers filed, a preliminary hearing was had and an injunction was granted on the 25th of January, 1819, enjoining the defendants from disposing of their stock in trade. At that time an undertaking was given, the language of which, according to the rule prescribed by the court, was that the principals and sureties should “make good to the defendant all damages by him sustained or suffered, by reason of wrongfully or irregularly suing out the injunction awarded in the above cause.”
After the goods were thus tied up in the hands of their owner, an order Avas made on the 12th of March, 1819, appointing receivers to take possession of and sell these goods at public auction. They were sold by the receivers, and, it is alleged, that they were sold at an enormous sacrifice. It is admitted that they were worth, when the injrmc *165 tion was issued, $T,000. They were sold for $1,600 or $1,800, after a lapse of only about five weeks. The injunction was granted until the final hearing, which did not take place for some two years afterwards. The receiver took possession of the goods one month and five days after the injunction had tied them up in the hands of the owner, and it is now claimed that the loss sustained upon the sale by the receiver is part of the damage suffered by reason of the injunction.
The question therefore comes up immediately: What steps were the results of obtaining the injunction?
The injunction did not take possession of the goods, of course. It only controlled their possession in the hands of the owner, and prevented him from disposing of them until the receiver was appointed, who then took them out of his possession. Did the injunction have any effect after that? It is said it ran imtil the final hearing two years afterwards, and that the appointment of the receiver was one of the natural legal consequences of obtaining the injunction.
Our opinion is that, although the parties may have contemplated the taking of the step when they obtained the injunction, it is not one of its incidents. Especially must this be so as to the sureties, for when they become responsible for any damage resulting from the obtaining of the injunction, it is plain they did not undertake to become responsible for the results of an entirely separate and independent step in the case, which might or might not be taken, and which the court might or might not allow to be taken. Their responsibility therefore ended when the injunction ceased to have any actual control over those goods; that is, at the end of one month and five days. After that the injunction could have no effect.
The goods were taken away from the owners by an entirety different measure — a measure to which these sureties were not parties; and even as to the principal, his undertaking is the limit of his responsibility for damages arising out of that undertaking, and even as to him it was entirety separate from his next step in the cause, which he might *166 not have taken and which he might not have been permitted to take.
What damages then have accrued or arisen from the operation of this injunction? It was shown that in this business and in similar businesses 25 per cent, profits per annum were ordinarily realized upon a stock. This is done by selling goods and turning the capital over and over again. That would give a fraction of over 2 per cent, a month profits upon the stock on hand, which, we think, is a fair estimate of profit; so that by tying up these goods and preventing the sale for one month and five days, the plaintiffs wrongfully prevented the defendants from realizthe profits which they might have made in that time.
The rule adopted by the court below was to allow interest simply on the value of the goods thus tied up, and that resulted in a decree for only $34.87. That does not give, as Ave think, a true rule; although the result of our own rule gives a very trifling compensation to the persons who appear to have been wrongfully restrained and whose business appears to have been very wrongfully broken up. We would be glad if, according to any known principle of law, Ave could impose a heavier penalty and put it where Ave think it properly belongs. But in view of the rule which AA'e think the law requires, Ave can only rIIoav the rate of profit which the proof shows might have been realized. That Avill give an amount which I shall presently state, after explaining another element in the cause.
It appears that after the injunction had been obtained, the landlord of the house in which this business had been carried on, issued an attachment for tAvo months’ rent. Ho therefore reduced to that extent the value of the goods controlled by the injunction ; the amount attached Avas $938, which deducted from $7,000, the value of the goods then on hand, left only $6,062 to be operated upon by this suit; and that consequently is the amount in Avalué of the goods which the defendants might have gone on trading with. Upon that amount Ave basé our calculation of profits, which results in this; the profits would have been for those thirty- *167 five days, $147.27; a very slight increase, it is true, but at the same time all that we can do under the principles of law applicable to the case.
As to the cost of the reference, that appears to have been disposed of in the decree below. I may remark in this connection that if the decree below, which was signed by me, had been actually and essentially my decree, I would be incapacitated uuder the statute to take part in this hearing. But it was laid before me as nearly as possible in the form of a consent decree. Of course if it realty had been a consent decree, no appeal could have been taken; but I was simply asked to sign it, in order that it might go further. That decree provided that the bill should be dismissed with costs, and although the only question here is as to the damages suffered under the injunction, we think, even if it had not been already provided for, we would have made the same order. The costs, of course, include the costs before the auditor. We modify the decree by substituting for the amount of $34.87, the sum of $147.27.
The bill is dismissed with costs.